DECISION
The matter before the Court was brought by the Portsmouth School Committee ("School Committee") and Susan F. Lusi, Superintendent of Schools ("Lusi") (collectively "Plaintiffs"), against the Town of Portsmouth ("Portsmouth") and the members of the Portsmouth Town Council ("Town Council") (collectively "Defendants"). Plaintiffs filed this action pursuant to G.L. 1956 § 16-2-21.4, the "Caruolo Act," alleging that the School Committee lacks the necessary funds and ability to operate the Portsmouth, Rhode Island schools for the balance of the 2006-2007 fiscal year. They argue that with the funds appropriated by the Town Council, it will be unable to comply with the mandates of law, regulations, and binding contractual obligations. Therefore, the complaint requests an order from this Court compelling Defendants to *Page 2 
increase the school appropriation. This Decision follows a bench decision of March 8, 2007, a transcript of which is attached as Exhibit A.
 BACKGROUND
On or about March 26, 2006, the School Committee submitted a budget request to Portsmouth in the amount of $33,483,162 for the fiscal year 2006-2007. The Town Council responded on June 16, 2006 by approving a budget in the amount of $32,461,335, representing a difference of $1,021,828. The School Committee adopted this appropriation on July 11, 2006. Later, on August 19, 2006, a Special Town Financial Meeting was called pursuant to Article II, § 208(6) of the Home Rule Charter of Portsmouth. As a result of this Special Town Financial Meeting, also known as the "tent meeting," the school budget was reduced again by $1,102,320 to $31,359,015, which is over two (2) million dollars less than what was originally submitted by the School Committee. Following this "tent meeting," on September 12, 2006, the School Committee voted to amend its budget to approximately $31,359,015 to meet the appropriated amount.
In early September 2006, the School Committee — believing that the appropriated amount fell short of the minimum necessary to have a balanced budget and meet state, federal, regulatory, and contractual burdens — petitioned the Commissioner of Elementary and Secondary Education in order to seek approval for alternatives of compliance with and/or waivers of state regulations. Later that month, on or about September 21, 2006, the Commissioner denied the School Committee's request for the alternatives and/or waivers. On or about October 10, 2006, the School Committee submitted a written request to the Town Council for an increase in the school appropriation — increasing the *Page 3 
now twice reduced budget figure — in order that the School Committee might meet its legal needs. On October 30, 2006, following a presentation to the School Committee and the Town Council by budget consultants privately retained by the School Committee, the Town Council voted unanimously, 6-0, to reject the School Committee's latest request to increase the appropriated budget figure. The most current figure submitted to this Court by the School Committee alleges a shortfall of approximately $787,051.
 CARUOLO ACT
Until the 1995 promulgation of § 16-2-21.4, disputes concerning a school committee budget proceeded through an administrative appeal process, with the ultimate decision-making power resting in the Commissioner of Education. If unsatisfied with the Commissioner's ruling, the school committee could appeal to the Board of Regents. Any appeal thereafter was only through a petition for common law certiorari to the Supreme Court. West Warwick School Committee v. Souliere,626 A.2d 1280 (R.I. 1993).
Seeking to streamline and neutralize the process,
 "[t]he new legislation changes elements of [the] prior law regarding the reconciliation and adjustment of local school budgets in instances where the school committee determines that its annual appropriated budget is not sufficient to meet state imposed educational mandates while satisfying the school committee's statutory obligation to maintain a balanced budget. The effect of the new law is that the ultimate decision-making power with respect to school budget disputes will be vested in the Superior Court, which may enter an order after conducting an evidentiary hearing requiring the local appropriating authority to increase the funds appropriated for the support of the local school system." Beil v. Chariho School Committee, et al., 667 A.2d 1259, 1259 (R.I. 1995).
As such, the procedure for reconciling the differences between appropriations and school committee demands is now a creature of statute. The Caruolo Act creates a step-by-step *Page 4 
process, through which, after surmounting some procedural hurdles, a school committee puts the determination of its budget in the hands of the Superior Court.
Most commonly, after the school committee presents its budget to the town council, the budget is reduced by some amount through either the powers vested in the town council or through a vote of empowered citizens, such as this case's "tent meeting." After the budget is returned to the school committee less the cuts made by the town council and/or citizens, the school committee must amend the budget and align its predicted spending with the appropriated amount, even if the appropriated amount will not be sufficient to cover all of its mandatory budget line items.
Pursuant to § 16-2-9, the second procedural hurdle requires the chairperson of the school committee to petition the State Commissioner on Education to
 "seek alternatives . . . to comply with state regulations and/or provide waivers to state regulations and, in particular, those which are more restrictive than federal regulations that allow the school committee to operate with a balanced budget. Waivers which affect the health and safety of students and staff or which violate the provisions of chapter 24 of this title shall not be granted. The commissioner must consider alternatives for districts to comply with regulations and/or provide waivers to regulations in order that the school committee may operate with a balanced budget within the previously authorized appropriation. In the petition to the commissioner, the school committee shall be required to identify the alternatives to meet regulations and/or identify the waivers it seeks in order to provide the commissioner with the revised budget which allows it to have a balanced budget within the previously authorized appropriation." Section 16-2-21.4.
If the Commissioner rejects the chairperson's requests for waivers and dismisses the alternatives presented, the school committee must then return to the town council and ask for an increase in the appropriation in order to meet the mandatory requirements imposed by state and federal law and the school committee's contracts. Only upon the town council's denial of this request may the school committee bring an action in the *Page 5 
Superior Court. The Court is not limited in its review as it would be in an action pursuant to the Administrative Procedures Act. Coventry Sch.Comm. v. Coventry Town Council, No. 95-6253, 1996 WL 936874 at *3-4 (R.I.Super. Jan. 17, 1996). This Court may, by judicial order, compel the town council to amend and increase the appropriation if the school committee can demonstrate that the appropriation approved by the town council is insufficient to operate schools for that fiscal year in a manner consistent with its obligations under law, regulations and contract. As in all civil matters, the school committee has the burden to prove its case by a preponderance of the evidence. Id.
 ANALYSIS
Article XII of the Rhode Island Constitution clearly espouses a state's responsibility to educate its citizens by stating:
 "Section 1. Duty of general assembly to promote schools and libraries. — The diffusion of knowledge, as well as of virtue among the people, being essential to the preservation of their rights and liberties, it shall be the duty of the general assembly to promote public schools and public libraries, and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education and public library services." Article 12, sections 1 of the R.I. Const.
The General Assembly is then charged with the task of implementing this constitutional edict, by providing the citizens of Rhode Island with their constitutionally protected right to an education. Town of Johnstonv. Santilli, 892 A.2d 123, 128 (R.I. 2006); City of Pawtucket v.Sundlun, 662 A.2d 40, 57 (R.I. 1995). The General Assembly delegated this task to school committees within Rhode Island by enacting § 16-2-9, which states in relevant part: "[t]he entire care, control, and management of all public school interests of the several cities and towns shall be vested in the school committees of the several cities and towns." Section 16-2-9(a). Section 16-2-9 outlines the several rights, powers, and *Page 6 
duties — such as maintaining a budget, caring for the property used in public education, and entering into contracts — embodied in each school committee throughout the state. See § 16-2-9(a). Having received this power directly from the General Assembly, school committees then act as agents, not of the municipalities in which they exist, but for the state. Coventry Sch. Comm. v. Richtarik, 122 R.I. 707, 712,411 A.2d 912, 914 (1980) (citation omitted).
While the list of powers granted to school committees is expansive, scattered throughout chapter 2 of title 16 are stern reminders of the fiscal requirements imposed on school committees and their budgets. After detailing the broadly scoped autonomy in § 16-2-9, the General Assembly warns school committees that,
 "[n]otwithstanding any provisions of the general laws to the contrary, the requirement defined in subsections (d) through (f) of this section shall apply. The school committee of each school district shall be responsible for maintaining a school budget which does not result in a debt." Section 16-9-2(d).
Reaffirming the basic principal of school committee budgeting in the second sentence of the section above, the legislature repeats the edict in the next section, stating, "[t]he school committee shall . . . adopt a budget as may be necessary to enable it to operate without incurring a debt, as described in subsection (d)." Section 16-2-9(e). That sentiment also appears in §§ 16-2-1, 16-2-11, and 16-2-21 all forbidding estimated expenses to exceed estimated revenues.
Further limiting the free will of school committees, § 16-7-24[1]
is part of a statutory scheme that requires municipalities and town/city councils to provide school committees an appropriated budget adequate to meet mandates from the federal and state *Page 7 
governments, educational regulations, and executed contracts. Further, Rhode Island has adopted a set of standards known as the Basic Education Program ("BEP"), representing another set of mandates which school committees must adhere to while operating their school system. School committees, then, rely on their local governments, as well as on state and federal aid, to provide the necessary funds. See § 16-9-1 et seq. Rhode Island law, in turn, requires a town or city to fund school committees with, when combined with any other state or federal aid, an amount at least sufficient to meet the costs of state and federally mandated programs, any lawfully entered contract, and any educationally related regulation. Exeter-West Greenwich Reg'l Sch. Dist. v.Exeter-West Greenwich Teachers' Ass'n, 489 A.2d 1010 (R.I 1985). As such, school committees have the difficult task of meeting the mandates imposed upon them by law under an appropriated budget while not operating at a deficit.
With this background in school financing in place, this Court takes note of its limited role in Caruolo actions as contemplated by General Assembly. The sole inquiry in an action brought pursuant to § 16-2-21.4
is whether the School Committee has adequate funding for the fiscal year 2006-2007. As stated in previous Caruolo actions, this Court interprets § 16-2-21.4 to require a trial on the merits where the School Committee has the burden to show that it lacks sufficient funding to run its schools in a manner that comports with various state, federal, and contractual mandates. See Coventry Sch. Comm. v. Coventry TownCouncil, No. 95-6253, 1996 WL 936874 at *3-4 (R.I.Super. Jan. 17, 1996). Further, in a 2005 Superior Court Caruolo decision, this Court stated:
 "[t]his Court neither serves as a `super school committee,' nor is it charged with the responsibility of making informed educational judgments *Page 8 
as to the appropriate mix of programs, or the staff necessary to carry out such programs. The Court is not responsible under the Caruolo Act for ensuring the highest quality educational experience for the children of any community. . . . Rather, the Court has only one function under the Caruolo Act — to determine whether the school committee has proven that it lacks the ability to run the schools for a particular school year with a balanced budget, within the previously authorized appropriation, while adhering to the mandates of state and federal law, regulation, the BEP, and its duly authorized contractual obligations. (Citations omitted). . . . Thus, the Court is limited in its coercive authority and may only order additional appropriations if it finds that such funds are required by the school committee to fund legally mandated expenditures. Funds necessary for more expansive or enriching programs, while perhaps educationally appropriate, cannot properly be the subject of a Court order." Sch. Comm. of Johnston v. Santilli, No. 04-6801, 2005 WL 1023070 at *11 (R.I.Super. Apr. 27, 2005).
Lastly, this Court notes that while school committees and superintendents are charged with the duty to forecast their budgets for at least a three-year period, the Order of this Court in the instant matter, has the force of law for only the balance of fiscal year 2006-2007. See § 16-2-21.2 (detailing responsibility of maintaining a three-year budget forecast); § 16-2-21.4 (limiting effect of the order of this Court to the fiscal year for which action is brought).
In the present matter, the Court heard testimony and received evidence over a four-day trial. Plaintiffs presented three witnesses: Superintendent Dr. Susan F. Lusi; Mr. Thomas E. Sweeney, Jr. of BE Consulting, LLC ("BE"); and Mr. Walter E. Edge, Jr. of BE. Mr. Sweeney was found to be an expert in the field of Rhode Island education and finance, drawing on several years of experience as a school superintendent, as well being previously qualified to testify in Caruolo actions. Mr. Edge, a CPA, who was qualified as an expert in school finance, relied on his experience with school budgets and Caruolo actions. In response, Defendants recalled Superintendent Lusi, presented their qualified expert, Mr. John Parmelee, a CPA, and finished by calling Mr. David P. *Page 9 
Faucher, Finance/Personnel Director for the Town of Portsmouth. Mr. Parmalee was qualified as an expert in accounting, drawing on his experience as a certified public accountant and as one experienced with school budgets.
This Court had before it the testimony of the three qualified experts, as noted above. The decision of this Court should in no way reflect upon the skill and professionalism of all who testified before the Court. However, this Court was particularly impressed with the testimony and evidence presented by Mr. Sweeney and Mr. Edge of BE. This Court found their testimony to be the most credible, and is of the opinion that their figures with regard to the School Committee's budget shortfall are the most accurate. Mr. Sweeney and Mr. Edge have been involved in the School Committee fiscal year 2006-2007 budget since as early as the spring of 2006. Such familiarity with the budget and the various changes that took place lend weight to their calculations. Mr. Parmalee even acknowledged to this Court that his budget projections were based, at least in part, on BE's figures. In light of the foregoing, this Court gives greater weight to the testimony and budgetary calculations presented by Mr. Sweeney and Mr. Edge.
BE recommended to this Court that the School Committee budget, as appropriated at the "tent meeting," fell $787,051[2] short of the amount necessary to run the Portsmouth school system in compliance with the law. Based upon the testimony and this Court's review of the testimony and financial information presented, this Court finds that the amount appropriated to the School Committee from the "tent meeting" is $544,051 less than what is needed in order for the School Committee to adequately run the Portsmouth schools for the 2006-2007 fiscal year with a balanced budget as mandated *Page 10 
by state law. Defendants are directed to appropriate this additional $544,051 to the School Committee for the fiscal year 2006-2007 budget.
In coming to this conclusion and after having ample opportunity to review the evidence presented, this Court has located areas within the recommended BE budget that may be amended to alleviate the fiscal pressure on the School Committee. This Court feels that adjustments can be made to the original figure of $787,051 submitted by BE, which, in fact, decrease the budget deficit down to the Court's award of $544,051. Specifically, this Court has identified one potential source of revenue, and four areas where expenses can be decreased. The following are intended as mere suggestions, and in no way limit the School Committee or Town Council in how best to address the budget shortfall.
First, this Court suggests that the School Committee include a Medicaid reimbursement of $203,000, rather than $103,000 in this year's budget. This is based on correspondence from CompuClaim, a private company specializing in Medicaid finance, informing the School Committee of an estimated $203,000 Medicaid reimbursement for the fiscal year 2006-2007. BE's budget suggests carrying over to next year's budget approximately $100,000 of the Medicaid reimbursement. Accordingly, the School Committee should account for the added $100,000 in this year's budget.
The second area is the "financial and program audit" mandated by § 16-2-21.4, expensed at approximately $84,000 in the BE budget. After reviewing and interpreting the relevant statutory provisions, it is the opinion of this Court that the audit referenced above was intended to assist the Court in its role in deciding Caruolo matters. The Court bases this determination, in part, on the plain language of the statute, stating that the audit *Page 11 
is to be commenced "[u]pon the bringing of an action in the superior court by the school committee to increase appropriations." Section16-2-21.4. In reading this section in conjunction with all of title 16, this Court feels the Legislature was attempting to provide an audit for this year only, and not beyond that. Neither the School Committee nor the Town Council caused this audit to be commenced, and as such, it cannot aid this Court in making its decision. Therefore, the audit is unnecessary and should not take place at the expense of the School Committee in this fiscal year's budget. This Court recommends that the approximately $84,000 for the audit should not be expended.
Third, this Court heard testimony that indicated that there are presently two openings at a special education placement center, Boys and Girls Town, as well as 3 Special Education students in the "pipeline" awaiting placement. BE's budget accounts for the filling of all of these openings, each costing approximately $17,000 for the duration of the fiscal year. This Court finds this to be overly conservative speculation and recommends that the School Committee budget for only four of these openings for the balance of the school year. Therefore, this Court suggests removing $17,000 from this portion of the BE budget.
Fourth, while there was testimony concerning the need for a full-time finance director, at this point in the fiscal year with preliminary budgeting meetings complete, this Court believes that the School Committee is better served by finishing this fiscal year with a part-time finance director. The School Committee has operated during eight months of the year on this basis, and should be able to continue to do so. The accounting for a part-time director as opposed to the BE recommended full-time director removes $17,000 from the expense side of the School Committee's budget. *Page 12 
Finally, this Court heard testimony concerning the two warrant accounts — one for building renovations and repairs and one for information and technology — under the jurisdiction of the Town Council but associated with the Portsmouth School System. This Court has had an opportunity to review exhibits submitted through Mr. Faucher detailing the balances of each. This Court is not inclined to disperse the funds subject to state reimbursement. However, this Court recognizes that there are various monies in the information and technology warrant — which have been allocated but not yet expended — not subject to state reimbursement and which could be removed from the warrant and used in the School Committee's budget. Accordingly, this Court suggests adding $25,000 of the warrant account to the School Committee budget.
 FINDINGS OF FACT AND CONCLUSIONS OF LAW
After a thorough examination of the entire record herein, this Court makes the following findings of fact:
 1. The School Committee of the Town of Portsmouth is a duly elected body entrusted with the care, custody, management and control of the public schools of the Town of Portsmouth.
 2. The Town of Portsmouth is a municipal corporation duly organized under the laws of the State of Rhode Island.
 3. Plaintiff Dr. Susan F. Lusi is the Superintendent of Schools for the Town of Portsmouth and is required by statute to exercise administrative authority over the Portsmouth School Department. *Page 13 
 4. Defendants James A. Seveney, Hubert E. Little, Dennis M. Canrio, Leonard B. Katzman, Peter J. McIntyre, Karen Gleason, and William E. West are the current members of the Portsmouth Town Council.
 5. Defendant David P. Faucher is the duly appointed Finance/Personnel Director of the Town of Portsmouth.
 6. On or about March 26, 2006, the Portsmouth School Committee requested a budget of $33,483,163 for fiscal year 2006-2007.
 7. The request of $33,483,163 represented an increase in the budget of approximately 11.84%.
 8. The School Committee made this budget increase based on several factors, including but not limited to increases for employer contributions to the state retirement system, the cost of special education and vocational tuitions, transportation, and fuel. The School Committee also intended a portion of the increased budget to assist in the offsetting of debt incurred from the fiscal year 2005-2006 budget.
 9. On April 17, 2006, the Town Council indicated that it would be unable to fund the entire budget request of the School Committee due to the limitations on tax increases imposed by G.L. 1956 § 44-5-2.
 10. The Town Council requested that the School Committee locate areas in its budget where approximately $1,300,000 could be cut. 11. The School Committee responded by cutting 12.8 teaching positions, though 4.5 were justified due to declining enrollment at the elementary level. *Page 14 
 12. On May 2, 2006, the School Committee retained consultants Mr. Edge and Mr. Sweeney of BE, to review the fiscal year 2006-2007 budget to determine whether $1,300,000 could be cut and the School Committee could still meet the state and federal mandates, the BEP requirements, and contractual obligations.
 13. Mr. Sweeney is a former Superintendent of Schools in Rhode Island and possesses an MBA. Mr. Edge is a CPA and possesses an MBA. Both have been qualified and testified as experts in previous Caruolo matters before the Superior Court.
 14. On or about June 26, 2006, the Town Council appropriated $32,461,335 to the School Committee for its fiscal year 2006-2007 budget.
 15. Having been advised by Mr. Edge and Mr. Sweeney that the School Committee could decrease its budget to the appropriated amount and still meet state, federal, and contractual mandates, on or about July 11, 2006, the School Committee voted to reduce its budget to meet the appropriated $32,461,335.
 16. On August 19, 2006, pursuant to the Portsmouth Town Charter, a Special Town Financial Meeting, also known as the "tent meeting," was held.
 17. At the "tent meeting," the budget was further cut by and additional $1,102,320 to $31,359,015. Further, the Town Council's budget was cut by approximately $632,797.
 18. On or about September 12, 2006, the School Committee voted to amend its budget to meet the $31,359,015 appropriated at the "tent meeting."
 19. The School Committee then employed Mr. Sweeney and Mr. Edge to determine if it was legally possible — given the state and federal mandates and contractual *Page 15 
obligations — to operate the Portsmouth schools with a $31,359,015 budget without incurring a deficit.
 20. On or about September 8, 2006, consistent with the provisions within § 16-2-21.4, the School Committee petitioned the Commissioner of Elementary and Secondary Education to seek approval of proposed alternatives for the School Committee to comply with state regulations and/or to obtain waivers to state regulations.
 21. On or about September 21, 2006, the Commissioner denied this request.
 22. On or about October 10, 2006, in accordance with the provisions of § 16-2-21.4, the School Committee submitted a written request to the Town Council that the Town Council increase the appropriation.
 23. On or about October 27, 2006, Mr. Sweeney and Mr. Edge made a presentation to the Town Council and School Committee. The presentation outlined the need for an additional appropriation over and above that which was set by the tent meeting in order to comply with state and federal law, as well as abide by the School Committee's contracts.
 24. Mr. Sweeney and Mr. Edge concluded that, at that time, an additional $770,167 would be necessary to fulfill state and federal mandates, the BEP, and contractual obligations. 25. Mr. Sweeney and Mr. Edge came to this figure by adjusting the budgeted amounts in certain accounts, including salaries, as well as by identifying other cash sources the expenditure of which would require specific Town Council approval.
 26. On or about October 30, 2006, the Town Council voted 6-0 to reject the School Committee's request to increase the appropriation. *Page 16 
 27. Since that time, Mr. Sweeney and Mr. Edge have monitored the School Committee's revenues and expenditures.
 28. As of the middle of February 2007, Mr. Sweeney and Mr. Edge opined that the School Committee required an additional $1,038,000 to its appropriation in order to meet the requirements of federal and state laws, the BEP, and school contracts.
 29. At a further joint meeting of the Town Council and School Committee held on February 27, 2007, Mr. Edge suggested a stipulated amount of $988,851.
 30. The Town Council in the interim had retained its own CPA, Mr. Parmelee, to examine the alleged School Committee deficit. As of February 28, 2007, Mr. Parmelee concluded that the School Committee required an additional appropriation of $1,088,729.
 31. At the time of trial, Mr. Sweeney and Mr. Edge were of the opinion that the School Committee required an additional $787,051, inclusive of the cost to prosecute this action, to complete the school year and meet all of its legal requirements.
 32. Mr. Parmelee also adjusted his figures in anticipation of this Caruolo action, and found that at the time of trial, the School Committee requires $889,617 in additional funds.
 33. Evidentiary hearings were conducted in the instant case on March 5, 6, 7, and 8, 2007.
 34. The Court heard testimony from five witnesses: Superintendent Susan Lusi, Thomas Sweeney, Walter Edge, John Parmelee, and David Faucher and received and reviewed over 40 exhibits. *Page 17 
 35. This Court accepts Lusi's testimony that in her time as Superintendent, she identified significant shortfalls in prior budgets. She noted that this was the driving force behind the large increase in the budget requests for prior years. Further, she noted the rising costs of special education, and highlighted her efforts — through the acquisition of waivers — to alleviate those costs without requesting an increased appropriation.
 36. This Court generally accepts the testimony of Mr. Sweeney who explored the various ways savings could be made, identified which programs were mandated, and noted the volatility of many line item accounts such as fuel, snow removal, and special education.
 37. The Court generally accepts the testimony of Mr. Edge, who testified in great detail with regard to the School Department's expected Medicaid reimbursement and the need for some contingent funds for Special Education students in the "pipeline."
 38. The Court, however, rejects the testimony of both Mr. Sweeney and Mr. Edge, as well as Dr. Lusi, that a full-time finance director is necessary for the remainder of the school year. Since the bulk of school budget preparations should now be complete, the Court finds that a continued part-time financial director will suffice for this fiscal year.
 39. The Court further rejects the contention of Mr. Sweeney and Mr. Edge that five openings must be funded for Special Education students for the remainder of the year. The Court finds that their conclusion is too conservative and that funding for only four openings is necessary. *Page 18 
 40. The Court also rejects the opinion of Mr. Sweeney and Mr. Edge that the expected Medicaid reimbursement be set at $103,000 rather than the projected amount estimated by CompuClaim of $203,000.
 41. The Court gives less weight to the testimony of Mr. Parmelee, who testified on behalf of the Town Council, noting that his work was based, at least in part, on the work already performed by BE. It specifically rejects his interpretation of when the financial and program audit referred to in the Caruolo Act was to be performed and finds that such audit must have been performed so that it could have been utilized by the Court prior to its decision and not after.
 42. The Court finds that there are two warrants, one for building renovations and repairs and one for information technology, each having $350,000 in them. Although the Town Council has jurisdiction over these warrants, since they are for the benefit of the school system, this Court finds that a portion, which has not yet been expended, can be applied to the school budget.
 43. While the Court generally accepts the opinions of the various experts that additional funding beyond that of the tent meeting is necessary to meet the requirements of federal and state laws, the BEP and school contracts, it nevertheless finds that the proposed amount offered by the School Committee of $787,051 is excessive and that between budget cuts and additional revenues, the amount necessary to properly fund the Portsmouth School Department for the remainder of this fiscal year is $544,051. The Court makes the following suggestions as to where adjustments can be made to justify this amount including the inclusion of an additional $100,000 in Medicaid reimbursements, elimination *Page 19 
of the financial and program audit of $84,000, elimination of one opening in the Special Education pipeline contingency of $17,000, elimination of the full-time finance director of $17,000, and the addition of $25,000 from the information and technology warrant which is under the jurisdiction of the Town Council but is for the benefit of the school department.
 CONCLUSION
Based on the findings of fact and conclusions of law set forth above, the Court determines that without an additional appropriation in the amount of $544,051, the School Committee will be unable to satisfactorily run the public school system in the Town of Portsmouth for the fiscal year 2006-2007. That is, the School Committee will be unable to maintain compliance with state and federal law and regulation, the BEP, and contractual agreements binding on the School Committee unless an additional $544,051 is granted. Accordingly, the Town Council is hereby ordered to cause such appropriation to be added to the School Committee's budget for the fiscal year 2006-2007, but leaves to the Town Council the manner in which such appropriation is to be accomplished.
Counsel shall submit an order consistent with the findings and conclusions of this decision.
[1] Pursuant to § 16-7-24, the Board of Regents for Elementary and Secondary Education has the power to adopt regulations with regard to the BEP and the appropriations that fund the BEP's goals.
[2] This figure includes the cost to prosecute the within action. *Page 1